UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INNOVATIVE SOLUTIONS INTERNATIONAL, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>HOULIHAN TRADING CO., INC., a Florida corporation; and DOES 1–20,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF EXPRESS AND IMPLIED WARRANTIES, NEGLIGENT MISREPRESENTATION, NEGLIGENCE, AND VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT**<br><br>**JURY TRIAL DEMAND** |

COMPLAINT - 1
311908227.2

Plaintiff Innovative Solutions International, Inc. ("Plaintiff" or "Innovative"), by and through their attorneys, K&L Gates LLP, allege the following against Defendant Houlihan Trading Company, Inc. ("Houlihan" or "Defendant") and Doe Defendants 1–20:

## I. INTRODUCTION

1. This is a case about mislabeled and misrepresented chicken products—products that Defendant labeled and represented to be boneless, but in fact, contained excessive bones. Plaintiff Innovative is a Washington family-owned and operated company that produces over 30 different poultry and meat products distributed nationwide. For approximately 15 years, Innovative produced and sold the widely popular Chile Lime Chicken Burger product exclusively to Trader Joe's. As one would expect, these were boneless burgers, meaning that Innovative purchased boneless raw materials to create them.

2. Between July and September of 2021, Innovative purchased and received chicken products from Houlihan, which Houlihan expressly represented were "boneless." While Houlihan sold Innovative the products, Pilgrim's Pride Corporation ("Pilgrim's") produced, prepared, and packaged the products at its own facilities, and a number of other companies in the supply chain purchased, sold, and controlled the chicken products prior to Houlihan's possession. When Innovative received these products, it used them to produce its Chile Lime Chicken Burgers.

3. In September 2021, Trader Joe's began receiving reports from customers finding bones and bone fragments in the Chile Lime Chicken Burgers. After a series of testing and inspections, Innovative discovered that the chicken products it purchased from Houlihan that summer contained excessive bones. A recall followed shortly after the discovery, and in December 2021, as a direct result of this adulterated product, Trade Joe's terminated its business with Innovative and discontinued the Chile Lime Chicken Burgers.

COMPLAINT - 2
311908227.2

4. On top of putting consumer safety at risk, Defendant has caused Innovative to suffer significant losses and extensive damages. For 26 years, Innovative had built its company and its reputation on safety and quality, both in its operations and for its products. Now, Innovative is left with no choice but to bring this lawsuit against Defendant, and potentially Doe Defendants 1–20, for their various breaches of warranty and contract, misrepresentation, negligence, and violation of consumer protection laws.

## II.   PARTIES

5. Plaintiff Innovative is a Washington corporation with its headquarters at 6755 South 216th Street, Kent, Washington 98032.

6. Defendant Houlihan is a Florida corporation with its headquarters at 161 Clarkson Executive Park, Ellisville, Missouri 63011. Plaintiff purchased the mislabeled chicken product from Houlihan pursuant to the parties' contractual agreements.

7. Non-party Pilgrim's Pride Corporation ("Pilgrim's") is a Delaware corporation with its headquarters at 1770 Promontory Circle, Greeley, Colorado 80634. Pilgrim's is an entity of interest in this case, given that it is the manufacturer and original processor and packager of the mislabeled chicken product. Innovative reserves the right, after sufficient discovery related to the at-issue product, to add Pilgrim's as a co-defendant in this matter, to the extent it determines that Pilgrim's was partially or entirely responsible for the selling of the adulterated product.

8. Doe Defendants 1–20, inclusive, on information and belief, were others in the supply chain that processed, packaged, sold and/or had custody and control of the mislabeled chicken product. Plaintiff reserves the right to add these Doe Defendants to the extent it obtains and/or discovers that an entity in the supply chain was responsible for the selling of the adulterated product.

COMPLAINT - 3
311908227.2

## III. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the controversy is between citizens of different states, and the amount in controversy exceeds $75,000.

10. This Court has personal jurisdiction under RCW 4.28.180 and .185, RCW 19.86.160, and under Fed. R. Civ. P. 4.

11. This Court has personal jurisdiction over Houlihan because Innovative's claims arise directly out of the Defendant's contacts with the State of Washington. Defendant has engaged in substantial business activities in or directed at Washington and has purposefully availed itself of the privilege of doing business in this forum. For example, and without limitation, Houlihan regularly engaged in business with Innovative (a Washington corporation) and sold and delivered the mislabeled chicken product to Innovative in Washington. Likewise, the injury Plaintiff alleges in this Complaint transpired, in substantial part, in Washington.

12. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Innovative's claims occurred in this district, or in the alternative, venue is proper under § 1391(b)(3).

## III. STATEMENT OF FACTS

**A. Innovative Produces a Popular Product Distributed Nationwide**

   **1. Innovative's Business Operations**

13. In 1996, Frank Sorba founded Innovative Solutions International, Inc., which he owns to this day. Over the last 26 years, Innovative established itself as a well-respected company distributing various food products throughout the United States food industry.

COMPLAINT - 4
311908227.2

14. Innovative produces high-quality, value-added chicken, beef, and pork products and distributes nationally to retailers such as Safeway/Albertsons, Kroger, Trader Joe's, Costco Wholesale, independent retailers, and wholesale distributors.

15. Innovative employs over 110 full-time employees and operates a state-of-the-art food processing facility in Kent, Washington, with over 60,000 feet of processing and warehouse space.

16. Innovative operates under continuous inspections from the U.S. Department of Agriculture (USDA), the U.S. Food and Drug Administration (FDA), and the Washington State Department of Agriculture. Innovative has also implemented additional safeguards, including retaining NSF-Cook & Thurber, an independent third-party, to conduct annual food safety audits. The reasons for these and other safety measures are straightforward; consumer safety is of the utmost importance to Innovative, and it stakes its reputation on the quality and safety of its products.

17. On a usual production day, Innovative produces over 20,000 individual stuffed chicken breasts or similar value-added beef or pork products, over 60,000 four-ounce chicken burgers, and over 6,000 pounds of marinades or sauces in its kettle room. Its facilities have the capacity to produce an additional 40,000 portions of ground formed pork, beef, or chicken products and uses in line nitrogen freezing tunnels and a large nitrogen spiral freezer.

**2. Innovative's Long-Standing Relationship and Business with Trader Joe's**

18. In 2007, Innovative developed the "Trader Joe's Chile Lime Chicken Burgers," a chicken burger it would sell exclusively to Trader Joe's. Until last year, Innovative produced and sold this product to Trader Joe's without any significant incidents, and the Chile Lime Chicken Burgers remained popular among Trader Joe's clientele.

COMPLAINT - 5
311908227.2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

19.     Innovative annually sold approximately 72,000 cases of the Chile Lime Chicken Burgers (*i.e.*, about 7,000,000 burgers) to Trader Joe's. In 2020, Innovative produced and sold just under 7,000,000 individual burgers to Trader Joe's. The following year, the burgers' popularity grew, and Innovative's sales from January 2021 to September 2021 were 13.4% higher than its 2020 sales.

**3.  Innovative Uses Raw Materials to Create Its Chile Lime Chicken Burger**

20.     To create the Chile Lime Chicken Burgers, Innovative purchases frozen boneless skinless chicken breast trim or pieces in bulk 40-pound cases and boneless skinless thigh meat in bulk 40-pound cases. Innovative then processes this material at 27 degrees Fahrenheit, which provides the chicken sufficient firmness to be formed into a burger patty.

21.     Innovative uses specialized equipment to "flake" the frozen blocks of chicken breast and thigh meat. "Flaking" is an industry term used to describe shredding blocks of meat into small pieces, which will be processed and formed. An auger conveyor then transfers these pieces to a mixer grinder, where the breast and thigh meat pieces are combined and ground for the first time. These pieces are then directly transferred into a second mixer grinder. After the flavor ingredients are added, the product is remixed again and ground one more time. Innovative then takes these pieces to the forming machine where the four-ounce burgers are produced, stacked, and then frozen and packaged.

22.     While Innovative's process includes various systems and checks for bone fragments, the primary manner Innovative uses to ensure boneless chicken patties is to order only boneless chicken product for its Chile Lime Chicken Burgers and other burger products and depends on accurate product labeling and distribution. Innovative has employed this process for 15 years.

COMPLAINT - 6
311908227.2

**B. The 2021 Shipments: Innovative Purchased a Product that Houlihan Represented to Be a Boneless Chicken Product**

**1. Innovative Purchased the Chicken Product from Houlihan**

23. Innovative and Houlihan have been doing business for at least eight years.

24. Between July and September of 2021, Innovative placed six purchase orders to Houlihan and received approximately 239,760 pounds of chicken product (collectively, the "2021 Shipments"). While Houlihan sold the products to Innovative, Pilgrim's prepared and packaged the products at its own facilities. Then, after a series of transactions, including at least one purchase or sale from certain persons/entities in the supply chain, Innovative received the 2021 Shipments.

25. All of Innovative's purchase orders to Houlihan and Houlihan's invoices to Innovative state the product is to be "boneless" and "skinless." Emails between the parties confirm this agreement. True and correct copies of the purchase orders, invoices, and certain relevant correspondence are attached hereto as "**Exhibit 1**."

**2. Pilgrim's and Others in the Supply Chain**

26. Pilgrim's was the original producer, processor, and packager of the chicken products in the 2021 Shipments that Innovative used in its Chile Lime Chicken Burgers and other burger products.

27. On information and belief, the others in the supply chain had custody and control of the chicken products in the 2021 Shipments.

28. The 2021 Shipments were labeled, through varying language and numerical codes, to indicate that the chicken products were "boneless" by industry standard.

COMPLAINT - 7
311908227.2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**C.     Bones are discovered in Innovative's Chile Lime Chicken Burgers**

   **1.  Consumers Reported Bones in the Chile Lime Chicken Burgers**

29.     In July and August of 2021, Innovative purchased the 2021 Shipment and used the products for its Chile Lime Chicken Burgers. After processing, Innovative prepared and shipped them to eight Trader Joe's distribution centers throughout the United States.

30.     In mid-September 2021, Trader Joe's received its first incident report regarding bones in the Chile Lime Chicken Burgers. Trader Joe's then informed Innovative of the incident report. Innovative then began investigating the issue. As part of its investigation, Innovative confirmed it had ordered boneless product and reviewed all of its production reports associated with the 2021 Shipments. While the investigation was ongoing, Trader Joe's received more incident reports from customers who were finding bones and bone fragments in the Chile Lime Chicken Burgers.

   **2.  Testing Confirmed Bones and Bone Fragments Were a Pervasive Issue in the 2021 Shipments**

31.     In early October, Innovative and Trader Joe's voluntarily placed all product on hold until they could understand the root of the problem. At that time, Trader Joe's instructed their stores to discard any product associated with the affected code dates from the 2021 Shipments.

32.     On or about October 8, 2021, Innovative began inspecting the raw materials for the Chile Lime Chicken Burgers.

33.     On or about October 13, 2021, Innovative inspected its raw materials from Pilgrim's and was alarmed to find excessive and large bones in the Pilgrim's product it had purchased as "boneless" and "skinless."

34.     Innovative was hopeful that the problem was isolated and that it could quickly resolve the issue. To X-ray and rework the burger products, Innovative hired FlexXray, based in

COMPLAINT - 8

311908227.2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Arlington, Texas, which specializes in X-raying products of all varieties of food product that may contain foreign matter. For this process, FlexXray received 505 cases of the Chile Lime Chicken Burgers from a Trader Joe's distribution center. FlexXray's plan was to examine all 24 individual boxes of chicken burgers from each case, X-ray each box, sort the bad product from good product, repackage the good product, and discard the bad product.

35. On October 21, 2021, FlexXray completed its inspection with representatives of Houlihan and Pilgrim's present. FlexXray examined 297 cases (*i.e.*, 7,128 boxes) of product and determined that ***all*** of the boxes were contaminated with excessive bone fragments. Not one box was safe for sale.

D. **Innovative Suffered Extensive Losses as a Result of the Mislabeled 2021 Shipments, Including the Loss of Trader Joe's Business and Other Damages**

1. **The Adulterated Product is Useless**

36. Upon learning of the FlexXray results, Innovative immediately contacted Pilgrim's to inform it that the Pilgrim's product was adulterated. After a series of additional communications, Pilgrim's refused to accept responsibility.

37. Innovative is unable to use or salvage the product from the 2021 Shipments. Innovative held 2,787 cases of the mislabeled Pilgrim's chicken product in its plant freezer from September 2021 until January 2021 and then moved all but one of the cases to a separate cold storage facility. Innovative currently has affected finished product on hold at its facility. The cost associated with this product and the product recall exceeds $500,000.

2. **The Adulterated Product caused Trader Joe's to Terminate its Relationship with Innovative**

38. On October 18, 2021, pursuant to 9 C.F.R. § 418.2, Innovative filed a Notice of Receipt of Adulterated or Misbranded Product with the USDA.

COMPLAINT - 9
311908227.2

39.   On November 10, 2021, the USDA issued a recall for approximately 97,887 pounds of raw ground chicken patty products that may be contaminated with extraneous materials, specifically pieces of bones. This required the return of any and all boneless chicken burgers derived from the 2021 Shipments, including the Chile Lime Chicken Burgers, as well as the Spinach Feta Chicken Sliders which Innovative sold to Kroger stores.

40.   On or about December 7, 2021, the Trader Joe's Recall Committee—which considers necessary actions after a project recall—opted to discontinue the Chile Lime Chicken Burger product. Shortly thereafter, Trader Joe's notified Innovative that they would no longer sell this product in their stores.

41.   The financial impact of Trader Joe's cancellation—a cancellation that Houlihan's mislabeling and/or supply of the product caused—is substantial. Over the last 10 years alone, Innovative sold Trader Joe's over a *half a million cases* (*i.e.*, 48 million four-ounce burgers) of Chile Lime Chicken Burgers. As noted above, this trend was increasing recently, resulting in the sale of over 70,000 cases of Chile Lime Burgers in 2018, 2019, and 2020 (the last full calendar year of sales). In total, Innovative estimates its current and future financial losses associated with this product could exceed $5 million.

IV.   **CAUSES OF ACTION**

**Count I – Breach of Contract**

42.   Plaintiff realleges and incorporates by references to the foregoing paragraphs of the Complaint as though fully set forth herein.

43.   Innovative has at all times performed all of its obligations under its agreement with Houlihan.

COMPLAINT - 10
311908227.2

44. Houlihan breached its contract with Innovative by providing non-conforming chicken products. Specifically, Houlihan provided chicken products with numerous bones and excessive bone fragments when Innovative and Houlihan agreed that the product would be boneless.

45. Houlihan's breach was material and went to the essence of its contract with Innovative.

46. Innovative was damaged as a result of Houlihan's material breach of the contract in an amount to be proven at trial.

### Count II – Breach of Express Warranty

47. Plaintiff realleges and incorporates by references to the foregoing paragraphs of the Complaint as though fully set forth herein.

48. Houlihan's expressly warranted that the chicken product would be boneless, through written and verbal representations such as labeling and other communications. Innovative relied on those warranties and representations. The warranties and representations were a basis for the bargain between the parties.

49. Houlihan breached its express warranties and representations.

50. The breach of the express warranties and representations damaged Innovative in an amount to be proven at trial.

### Count III – Breach of Implied Warranty

51. Plaintiff realleges and incorporates by references to the foregoing paragraphs of the Complaint as though fully set forth herein.

52. As a result of communications between the parties before the delivery of the chicken product to Innovative, Houlihan had reason to know the particular purpose for which the

COMPLAINT - 11
311908227.2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

chicken product was needed, *i.e.*, to produce boneless value-added chicken products that were safe for consumers. Defendant impliedly warranted the chicken product to be, in all respects, fit and proper for that purpose.

53. Innovative relied on Houlihan's skill or judgment to select, furnish, and label chicken product fit for the specified purpose.

54. Houlihan failed to deliver suitable chicken product, and the product they delivered was not fit for producing boneless value-added chicken products that were safe for consumers.

55. The defective nature of the product and Defendant's breach of this implied warranty proximately caused damage to Innovative in an amount to be proven at trial.

### Count IV – Negligent Misrepresentation

56. Plaintiff realleges and incorporates by references to the foregoing paragraphs of the Complaint as though fully set forth herein.

57. Houlihan labeled, marketed, and represented the chicken product in the 2021 Shipments as a boneless product. In doing so, Defendant misrepresented existing material facts.

58. Innovative relied on Defendant's misrepresentations in making its decision to go forward with the purchase of the chicken product.

59. Innovative was damaged by Defendant's misrepresentations.

### Count V – Negligence

60. Plaintiff realleges and incorporates by references to the foregoing paragraphs of the Complaint as though fully set forth herein.

61. Houlihan, a poultry distributor, had a duty of care to its buyers, such as Innovative, including but not limited to a duty to exercise reasonable care in selling and marketing products that were correctly labeled, fit for human consumption, and obtained from reliable sellers.

COMPLAINT - 12
311908227.2

62. A reasonably prudent distributor would have inspected its products, ensured that they were correctly labeled, and purchased them from reputable and reliable sellers who would do the same. Houlihan breached its duty to Innovative by selling and delivering excessively boned chicken product that was mislabeled and not fit for human consumption.

63. A reasonably prudent distributor could reasonably foresee that products without proper inspection or that were mislabeled would be unsafe for consumption. Houlihan's failure to properly inspect the product and ensure proper labeling proximately caused Innovative's damages in an amount to be proven at trial.

### Count VI – Violation of Washington's Consumer Protection Act

64. Plaintiff realleges and incorporates by references to the foregoing paragraphs of the Complaint as though fully set forth herein.

65. Houlihan has engaged in unfair and deceptive acts or practices in the course of trade and commerce, which deceived or had the capacity to deceive a substantial portion of the public. Houlihan represented a product to be boneless when it contained numerous bones and excessive bone fragments.

66. The unfair or deceptive act or practice impacts the public interest because such act or practice is a health hazard to a wide range of consumers and puts consumer safety at risk. Specifically, Defendant's unfair or deceptive act or practice has the potential mislead the public and result in consumer injuries such as choking.

67. The unfair or deceptive act or practice has damaged Plaintiff in its business, trade, and property, causally arising from Houlihan's unfair or deceptive acts.

68. Defendant's acts and omissions are in violation of the Unfair Business Practices/Consumer Protection Act, RCW Chapter 19.86.

COMPLAINT - 13
311908227.2

69. As a direct and proximate result thereof, Defendant is liable to Plaintiff for treble damages, together with attorneys' fees and costs pursuant to RCW 19.86.090, all in an amount to be determined at trial.

## V. REQUEST FOR RELIEF

Plaintiff respectfully asks this Court to grant the following relief:

A. Judgment in favor of Plaintiff for damages in an amount to be proven at trial, in an amount that exceeds $5.5 million.

B. An award of attorneys' fees under any agreement, statute, or rule authorizing such an award.

C. For injunctive relief, requiring Houlihan not to market excessively boned chicken products as boneless and to accurately market and label its products.

D. Such other and further relief as this Court deems just and equitable.

DATED March 10, 2022.

K&L GATES LLP

By *s/ Philip M. Guess*
Philip M. Guess, WSBA # 26765

925 Fourth Ave., Suite 2900
Seattle, WA 98104-1158
Phone: (206) 623-7580
philip.guess@klgates.com

Attorneys for Plaintiff

COMPLAINT - 14
311908227.2